## The People v. James Morrigan and another.

*Evidence : Stolen bills : Description : Identification : Statements : Res gestæ.* It is not error, on a trial for larceny from the person, to permit the prosecuting witness, who has identified a bank bill found on the person of the defendant, to testify that he had described this bill to one of the detectives previously; such a statement, connected with the circumstances under which it was made, is rather to be regarded as a fact belonging to *res gestæ* than as a mere hearsay statement or declaration.

*Evidence : Stolen bills : Identification.* Whether or not it is an admissible method of identification of a bank bill in such a case, for the prosecuting attorney to pick up the bill by itself and show it to the witness for identification :—*Quære ?*

PEOPLE v. MORRIGAN.

But where the witness has previously recognized the bill without objection, the objection to this method of identification comes too late to have any force.

*Evidence: Cross-examination: Contradictory statements: Probabilities: Candor: Credibility.* On cross-examination of a prosecuting witness in such a case, who claims to have been robbed of a large sum of money, questions tending to elicit the fact that he was indebted considerably and straitened, and that his stock of goods was small, and also to show that he had made statements, on the preliminary examination of the prisoners, which made out his inventory to have been very much larger than he knew it to have been in fact, are admissible, as bearing upon the probabilities, and to test his candor and credibility.

*Evidence: Collateral inquiries.* Questions put to other witnesses to impeach the prosecutor by showing contradictory statements concerning his getting back a part of the money alleged to have been stolen, are held inadmissible as being collateral inquiries.

*Evidence: Detectives: Criminal possibilities: Experts.* The exclusion of the testimony of detectives, as to whether it was possible to commit the robbery in the manner charged, held not error, as the subject is not a proper one for experts. Any one's theories on criminal possibilities should not be allowed to contradict witnesses who swear to ordinary facts within their knowledge.

*Evidence.* The testimony of the tailor to whom the prosecutor carried his coat, from which he alleged his pocket-book had been stolen, to be mended, as to experiments made to see whether such a pocket-book could have been taken through the cut made in it as it then was, is competent, especially where it appears that the coat has been since mended and ripped open again.

*Prisoner's statement: Leading questions.* It is not error for the court to refuse to allow leading questions to be put to the prisoner by his counsel, while making his statement; leading suggestions to him in any form are improper. The practice on this subject pointed out in *Annis v. People*, 13 *Mich.*, 511, referred to and approved.

*Heard January 9. Decided January 27.*

Exceptions from the Recorder's Court of Detroit.

*Byron D. Ball, Attorney General,* for the People.

*S. Larned* and *F. A. Baker,* for the respondents.

CAMPBELL, J.

Defendants were convicted of larceny from the person of one John L. Merrill, whose story was that he was hustled in the cars by certain persons including the defendants, and had his coat cut open near the breast pocket, and his pocket-book taken away, with one thousand one hundred dollars in bills, consisting of three fifty-dollar bills, fifteen twenty-dollar bills, ten or twelve ten-dollar bills, and the remainder in five dollar bills. Several exceptions were taken at the trial, which are now urged against the conviction.

A ten-dollar bill found on defendant Myers was recognized by Merrill on the trial, from certain peculiarities. He was allowed, under exception, to state that he had described this note to one of the detectives at the police station previously, and it is now urged that this is an attempt to corroborate him by a repetition of his own statements, and inadmissible. We do not think this is open to that objection. The conduct of a party complaining of a crime, is often of considerable importance in determining his honesty, and we think such a statement, connected with the circumstances under which it was made, is rather to be regarded as a fact belonging to *res gestæ* than as a mere hearsay statement or declaration. It was open to contradiction; and while such a communication may undoubtedly be used to charge innocent persons who are known to possess articles described, yet it is after all such information as is necessary to enable the police to get upon the track of offenders, and cannot be regarded as gratuitous.

An objection was also made that the prosecuting attorney should not have been allowed to pick up the note by itself and show it to the witness for identification; but that he should have been required to select it himself from the pile of bills shown him.

It appears from the bill of exceptions that the witness had previously recognized the bill without objection. The objection was therefore too late, and had lost any force it might have had originally. We are not prepared to lay it down as a rule of law that such a method of identification is illegal. Courts have always exercised considerable discretion in regard to leading questions. There can be no doubt that it is very unfair to a prisoner to omit any precautions which will aid in preventing dishonesty in a prosecuting witness, but the circumstances of each case must have force in determining this. In the present case, after the bill had been recognized already, there does not appear to have been any ground of complaint.

An objection was made and overruled, to the rejection

by the court of questions put to the witness, tending to elicit the fact that he was indebted considerably and straitened, and that his stock of goods was small, and also to show that he had made statements on the preliminary examination of the prisoners, which made out his inventory to have been very much larger than he knew it to have been in fact.

We were at first inclined to consider the exclusion as not erroneous. But upon further consideration we think the questions should have been allowed. Upon cross-examination much latitude should be allowed upon such questions as tend to throw light on the character and candor of the witness. If he had falsified his pecuniary condition on an examination involving the question whether he had been robbed of a large sum of money, it certainly ought to impair the confidence of the jury in his veracity, and should lead them to scan his testimony very closely. It was a line of inquiry of some importance in testing the witness's candor and credibility. And where a person under the circumstances suggested in the questions, claims to have been robbed of large amounts, it is not improper to take steps to ascertain from himself his pecuniary condition, so far as it can reasonably bear upon the probabilities. The authorities do not recognize such an inquiry as so connected with the merits as to be open to impeachment, but it is within the range of proper cross-examination.—*Wilbur v. Flood, 16 Mich., 40.*

The questions put to other witnesses to impeach the prosecutor by showing contradictory statements concerning his getting back a part of the money alleged to have been stolen were properly rejected, as the inquiries, though legitimate cross-examination, and allowed as such, were collateral.

Neither do we think the court erred in excluding testimony of detectives as to whether it was possible to commit the robbery in the manner charged. The subject is not a proper one for experts. There is nothing in such an investigation which would prevent a jury from being able

to judge for themselves whether the thing described as having been done is possible. The experience of courts with the testimony of experts has not been such as to impress them with the conviction that the scope of such proofs should be extended. Such testimony is not desirable in any case where the jury can get along without it; and is only admitted from necessity, and then only when it is likely to be of some value. If experts are allowable on questions of criminal science, the professors and practitioners of that science would naturally be the experts needed. It is not presumable they would be easily obtained or very candid; and in a class of cases where possibilities are the subject of inquiry, it would be somewhat questionable whether detectives who are reputable could have complete knowledge on all criminal possibilities, however extensive they may suppose their knowledge to be. We do not think the purposes of justice or of truth would be subserved by tolerating the notion that witnesses who swear to ordinary facts within their knowledge should be contradicted by any one's theories on criminal possibilities.

But we think the testimony of the tailor to whom the prosecutor carried his coat to be mended, as to experiments made to see whether such a pocket-book as he described could have been taken out of the pocket in that condition, ought to have been received. Those experiments were fact and not theory, and the coat was then in the same condition in which it had been at the alleged robbery. Having been since mended and ripped open again, it was quite pertinent to know what its original condition was, and whether a pocket-book could at that time have been got at by means of the rents in the garment. Such experiments were, if honestly made, of some value, and should have gone to the jury.

We think the court below was not bound to allow a leading question to be put to the prisoner while making his statement, or to aid him in making it. While the court should see that he is not cut off from having his

attention called, in the way pointed out in *Annis v. People*, *13 Mich., 511*, to such subjects as are pertinent, it would be entirely improper to allow leading suggestions in any form.

The conviction must be set aside, and a new trial granted.

COOLEY, J., and GRAVES, CH. J., concurred.

CHRISTIANCY, J., did not sit in this case.