Billye **LEEPER**, Administratrix of the Estate of William V. Lewis, Deceased, Plaintiff in Error,

v.

Etta **THORNTON**, Administratrix of the Estate of Hamp W. Thornton, Deceased, Defendant in Error.

No. 38295.

Supreme Court of Oklahoma.

Sept. 15, 1959.

Rehearing Denied Oct. 20, 1959.

Foliart, Hunt & Shepherd, Oklahoma City, and Stevenson, Huser & Huser, Holdenville, for plaintiff in error.

James F. Haning, Wewoka, and Thomas M. Stevens, Shawnee, for defendant in error.

BLACKBIRD, Justice.

This wrongful death action arose out of a collision between two automobiles on U. S. Highway 270, a few miles east of Shawnee, Oklahoma, on the morning of November 6, 1955. One of the autos was a black 1950 model four-door Kaiser Sedan that had been traveling west on said highway and was driven by one Hamp Thornton. The other was a white, or light colored, 1954 model, two-door Mercury Sedan, traveling east on the same road and driven by one William V. Lewis. The injuries received by Thornton and Lewis were fatal, and, according to Bryce Wilde, the Highway Patrolman who investigated it, there were no eyewitnesses to the accident. It is rather accurately calculated, and agreed, that the accident occurred a few minutes before 4:00 o'clock a. m.

This action was instituted in February, 1956, by plaintiff in error, hereinafter referred to as plaintiff, seeking damages for Lewis' death against defendant in error, as defendant, on the theory that the collision was caused by Thornton's negligence. In defendant's answer and cross-petition, she not only denied plaintiff's allegations of Thornton's negligence, but, on the basis of allegations that the collision was caused by Lewis' negligence, sought damages against plaintiff under two causes of action. On the basis of the second of these alleged causes, defendant, hereinafter referred to as cross-petitioner, prayed for damages in the sum of $540.56 to cover expenses incurred in connection with Thornton's funeral and burial, and $500 as the value of his automobile.

In paragraph 7 of her first cause of action, cross-petitioner alleged that Thornton contributed $80 per month to the support of his three minor children by his divorced wife; that, had he lived, he would have continued these monthly contributions until each minor reached 18 years of age; and that the youngest of the three would reach that age 13 years from the date of the filing of the cross-petition. On the basis of these allegations and cross-petitioner's calculations, the total damages she prayed for under her first cause of action, was $12,480.

When the case finally came to trial before a jury in October, 1957, cross-petitioner, with the court's permission, amended the above described paragraph 7 of her cross-petition to show when Thornton's youngest child, Richard Wayne, would reach his twenty-first (instead of his 18th) birthday, and to substitute the figure "$15,360.00" for the figure: "$12,480.00" as the total amount of damages she was claiming for Thornton's anticipated contributions to the children's support if he had lived.

At the trial, proof of which of the dead drivers was responsible for the early morning collision revolved primarily around attempting to show whether it was the result of Thornton's driving his Kaiser across the center line of the highway into its south traffic lane where Lewis' Mercury was traveling, or whether the Mercury crossed said line and rammed the Kaiser while it was traveling in the north, or its own proper, traffic lane. As there were no eyewitnesses to the collision, and, when the cars were first seen afterward, they were so far apart and facing in such different directions from those in which they had been traveling, that an untrained eye could not readily, or at a glance, determine at just what point on the highway they had met, photographs and testimony of experts were used to try to reconstruct the collision and show the jury on which side of the highway's center line it occurred, and which car precipitated it by crossing into the other's lane. The original photographs of the damaged

autos at the scene, or in the surroundings in which they were first seen after the accident, and other photographs taken of them after they were moved to Shawnee's S & S Salvage Yard, were all taken by the same photographer and used by both opposing counsel in examining and cross-examining the expert witnesses. The witness plaintiff qualified as an expert was the above-mentioned highway patrolman, Bryce Wilde. The one called by the cross-petitioner was Mr. Ralph H. Snyder, a safety engineer.

After the evidence was all in and the cause submitted to the jury under instructions which erroneously represented the total amount cross-petitioner sought on her second cause of action to be $1140.56, instead of $1040.56, a verdict was returned for cross-petitioner in the larger amount on that cause of action, and for $15,360 on her first cause of action.

At the hearing on plaintiff's motion for a new trial, the court found the verdict excessive to the extent of $100 in the amount awarded cross-petitioner on her second cause of action, and excessive to the extent of $2880 in the amount awarded her on her first cause of action. Accordingly, cross-petitioner was required, as a condition to the overruling of plaintiff's motion for a new trial, to file a remittitur of said excessive amounts. After the remittitur was filed, and the order overruling her motion for a new trial was entered, plaintiff perfected the present appeal, and cross-petitioner cross-appeals complaining of being compelled to remit the cited amounts.

█ In her cross-appeal, cross-petitioner confesses that the remittitur of $100 on her second cause of action was proper, but says the remittitur of $2280 on her first cause of action was improper "under all of the evidence * * *". As hereinbefore indicated, the total amount she requested for damages to compensate for Thornton's anticipated contributions to his children's support, was computed from the number of years it would take the youngest child, Ralph Wayne, after the filing of the cross-petition in 1956, to reach his 21st birthday.

After her pleading's amendment by interlineation, the time that would take was still specified therein as "13 years." No record showing said minor's age has come to our attention, except cross-petitioner's testimony (at the time of the trial in October, 1957) that he was 9 years old. If he was then 9, he most probably was 8 in February, 1956, when the cross-petition was filed. If cross-petitioner was entitled to $80 per month, or $960 per year, for the 13 years elapsing between Ralph Wayne's 8th year in 1956, and his 21st birthday, then, on the basis of the evidence and her pleadings, she could recover no more than $12,480. Therefore, we are unable to see how the trial court erred in directing a reduction of cross-petitioner's recovery, on her first cause of action, from $15,360 to $12,480. Accordingly, we hold that the cross-appeal is without merit.

Plaintiff opens the argument on her appeal by taking the position that the verdict and judgment "is supported solely by the testimony of the witness Snyder" and must stand or fall upon its sufficiency. Then she proceeds to set forth the issues presented in seven paragraphs but her argument is set forth under three separate propositions, all of which relate directly or remotely to Snyder's testimony.

Under plaintiff's Proposition No. 1, she cites the case of Young v. Travelers' Ins. Co., 10 Cir., 68 F.2d 83, as authority for her statement that where "the expert witness bases his opinion in part on facts which are not in evidence and on assumptions of his own, such testimony is without probative effect", and she quotes from Craddock v. Greenberg Mercantile Inc., Mo., 297 S.W. 2d 541, cited along with Gaddy v. Skelly Oil Co., 364 Mo. 143, 259 S.W.2d 844, as authority for the proposition that the opinion of an expert cannot be invoked to supply facts; but she makes no direct attempt to show how these statements and authorities apply to this case, or to the testimony of Snyder, other than what is said under her Proposition No. 2.

Under both her propositions numbered 2 and 3, plaintiff attempts to point out certain

assumptions of fact in Snyder's testimony without referring directly or specifically to the alleged errors to which her various arguments pertain, or pointing to the place in the record where such error was preserved for review herein. Plaintiff's argument may be characterized generally as a critique of Snyder's testimony directed almost entirely at its probative value.

■ Her counsel call our attention to the fact that Snyder (unlike plaintiff's expert witness, Wilde) was not at the scene of the accident at any time near the date it occurred, and did not commence his investigation of it until April or May, 1957 (approximately 1½ years after it occurred), and that his testimony concerning it was based upon information he obtained on a trip, at that remote time, to the site of the accident and to the S & S Salvage Yard where he viewed the Kaiser, and, from studying the hereinbefore mentioned photographs (some of which cross-petitioner's attorney appears to have been able to furnish him for that purpose, that far in advance of the trial). Counsel say that if Snyder's trip to the site of the collision "provided him with any facts at all, he would necessarily have to assume that those facts were the same identical facts which applied when the accident happened and on this there was not the slightest evidence." Counsel does not specify what "facts" they refer to, but if they mean such physical characteristics of the highway as the width of the pavement, its elevation from one side to the other, the width of its shoulders, etc., some of such facts had been established by the testimony of plaintiff's own witness, Bryce Wilde, and other evidence, before Snyder testified; and we find no contention made at the trial that such road conditions had changed materially between the date of the accident and Snyder's investigation. Nor do we find any timely objection, on that ground, to the admission of Snyder's testimony as to the controlling issue of "point of impact." Part of the opinions, observations and conclusions Snyder gave concerning the automobiles' point of impact on the highway were based upon certain characteristics of the damage and mutilation wrought by the collision on certain parts of the two cars. Plaintiff's counsel call attention to portions of said witness' testimony showing that he went to the salvage yard and personally examined Thornton's Kaiser and based his opinion with reference to how the collision happened upon his observations during said examination, as well as his observations from viewing the photographs taken at the scene of the collision. Counsel also points to the testimony of the salvage yard operator that certain alterations were made in the Kaiser after it reached the yard and to the fact that, for this reason, said photographs, thereafter taken of it, were excluded from the evidence. The inference is that Snyder's cited testimony was just as inadmissible as the photos, and was so, for the same reason. We do not agree. The photos of the Kaiser, after it had been altered at the salvage yard, would not have furnished an accurate picture of just what happened to it in the collision, and, including as they did, changes that were made in the car afterward, might have confused, rather than enlightened, the jury, as to the force of the impact, its direction, etc.; whereas, Snyder's testimony shows clearly that, in his personal examination of the car in the salvage yard, he considered pertinent to the subject of his investigation, only those parts of the car (such as "the left front fender and headlight and left front door * * *".) that were shown by the photos, taken immediately after the collision, to have been affected by it.

Plaintiff's counsel next point to one portion of Snyder's testimony where they say he "assumed" without "the slightest evidence" of it, that the Kaiser and Mercury "were of the same weight." While it is true that, in the testimony referred to, Snyder defined what he referred to as "predominance" in a collision of "two vehicles such as these with about the same weight", counsel's statement concerning the absence of any evidence in that regard is refuted by the testimony of plaintiff's witness, Wilde, who preceded Snyder to the witness stand.

Wilde testified: "The Mercury and the Kaiser were almost the same weight."

■ Plaintiff's counsel next say that, by his testimony to the effect that the Mercury was "predominant" over the Kaiser in the collision, there is an inference that the Mercury was traveling faster than the Kaiser, which inference counsel characterizes as a "distinct assumption on the part of the witness * * *". Of course, no one *knew* how fast each of these autos was traveling at the time of the collision. It was the opinion of plaintiff's witness, Bryce Wilde, that their speed was "very close to the same", and he estimated it to be approximately 50 to 55 miles per hour. Snyder did not purport to testify how fast the cars were going. The most he claimed to be able to do in this regard was to establish, from various physical facts, which of the two vehicles involved was going the faster. But speed was only one factor along with relative weight, direction, "overlap" and others that he said were considered in determining "predominance."

Plaintiff's other criticism of Snyder's testimony, in so far as it pertains to the speed of the vehicles, may represent one view of it, but, from our examination of this witness' testimony as a whole, we cannot say that criticism represents a fair and unbiased appraisal of it, or demonstrates that it is insufficient in weight or probative value to support the jury's apparent conclusion that Lewis' Mercury was on the wrong side of the road when the collision with the Kaiser occurred.

Another assumption which inheres in Snyder's testimony, according to plaintiff's argument under both her propositions 2 and 3, concerns the directions in which the two vehicles were traveling when they collided. Her counsel say there is "no direct evidence in the case which establishes" this, and unless it is *assumed* that the Lewis Mercury was going east and the Thornton Kaiser was going west "everything stated by the witness Snyder evaporates completely." Plaintiff's counsel point to the absence of any spoken word in Sny-

der's testimony establishing such facts and they pose the question of his ability to show where and how the cars collided "without knowing" what direction each was traveling. While the directions the cars were traveling was not an issue, since the respective pleadings of the two parties alleged this, without contradiction, the evidence sufficiently discloses these facts, not only from the location of the places the two cars had been just previous to the accident and the direction toward which they were indicated to be destined, but also from the demonstrations conducted by the expert witnesses as to how the cars met and which sides of each car were next to, or nearest, the middle line of the highway when this occurred.

Nor did the difference in weight or significance which the two experts accorded certain marks on the pavement, or the distance between the two cars after the collision, or other criteria of how and where the collision occurred, necessarily condemn Snyder's testimony, or render it unworthy either of submission to the jury, or of our consideration in determining whether the verdict and judgment have sufficient support.

■ Plaintiff's counsel also say that Snyder's testimony "reasons backwards" and that he draws many unwarranted conclusions from having "first assumed" that the accident occurred on the north half of the pavement. We find no such assumption in Snyder's testimony. Rather than assuming which side of the highway the collision occurred on, we think Snyder's testimony shows that he undertook the task of *showing* the jury how and why *he had determined* that it happened on the north lane. Whether his conclusions were reasonable deductions from the known facts in evidence was properly for determination by the jury. In this connection and as to related matters, notice the discussions in Tuck v. Buller, Okl., 311 P.2d 212, 66 A.L.R.2d 1043; Continental Oil Co. v. Elias, Okl., 307 P.2d 849, 859; Swink v. Colcord, 10 Cir., 239 F. 2d 518, 521; Woyak v. Knoieske, 237 Minn. 213, 54 N.W.2d 649, 33 A.L.R.2d 1241, and

Wells Truckways, Ltd. v. Cebrian, 122 Cal. App.2d 666, 265 P.2d 557. From our examination of the record, we have determined that the testimony of the witness, Ralph H. Snyder, when considered with supplemental and corroborative evidence, is sufficient to support the verdict and judgment as to the decisive issue for which it was introduced.

As we have found in the arguments of plaintiff in support of her appeal and those of the cross-petitioner in support of her cross appeal, no valid or tenable ground for disturbing said judgment, it is hereby affirmed.

WILLIAMS, V. C. J., and WELCH, HALLEY, JOHNSON, JACKSON and BERRY, JJ., concur.