**Louise M. MILLER, Plaintiff in Error,**

v.

**M. E. HICKMAN and ——————— Huffman,**

*Defendants in Error.*

No. 38900.

Supreme Court of Oklahoma.

Jan. 31, 1961.

C. Everett Murphy, Kingfisher, Robert Lovell, Hennessey, for plaintiff in error.

Shutler, Shutler & Baker, Kingfisher, Savage, Gibson, Benefield & Shelton, Oklahoma City, for defendant in error.

BLACKBIRD, Vice Chief Justice.

This action arose out of a motor vehicle collision between a sedan driven by plaintiff in error and a tractor-trailer truck operated by the defendant in error, M. E. Hickman, through his employee, Ronald Huffman, driver of the truck. When plaintiff in error instituted the action, as plaintiff, to recover damages for personal injuries she allegedly received, and hospital and medical expenses incurred, as a result of the accident, she named both Hickman and Huffman, as defendants; but, as she never obtained service on Huffman, our use of the designation "defendant" herein will refer only to Hickman.

The collision occurred during a heavy morning rain on a highway curve approximately 2½ miles northeast of Hennessey, at a point where U. S. Highway 81 forms a bifarcation, or "Y", with State Highway 51. The two vehicles were traveling in opposite directions as they proceeded into the curve; plaintiff's going south toward Hennessey, and defendant's going north toward Enid. In plaintiff's petition, defendant's negligence was alleged to consist of the driving of the truck at a speed "exceeding the speed limit for trucks" at a time when weather and road conditions required "greater care and caution", and its being driven to the left of the center of the highway. In his answer and cross petition for recovery of damages from plaintiff on account of his truck being disabled in the

collision, defendant denied that he, and/or his driver, was guilty of any negligence causing the collision, and alleged, in substance, that it was caused entirely by plaintiff's negligence, more particularly in her driving her car to the left of the highway's medial line at a speed greater than would permit her to stop within the assured distance ahead, and in her failing to maintain a proper lookout.

At the trial, plaintiff's evidence, which included the testimony of Leonard Goodpasture (a highschool senior, who testified he was traveling in a pickup truck about 20 to 30 yards behind plaintiff's car as it entered the curve) tended to show that defendant's truck struck plaintiff's car at least two feet west of the highway's center, or medial line, while the latter was driving in its proper (southbound) lane, at a speed estimated variously from 25 to 35 miles per hour; and that the truck was then traveling from 50 to 55 miles per hour. Huffman, defendant's truck driver, testified that he was negotiating the curve at 25 to 35 miles per hour and was in the proper (northbound) lane of traffic, proceeding about 2 feet east of the center line when plaintiff's car, then 50 feet from the truck, suddenly "pulled over" and "just turned into the side of me."

The testimony of a State Highway Patrolman or "trooper", W. P. Tucker, who came to the scene of the accident, after it occurred, tended to support Huffman's testimony as to the collision's point of impact; and the question of where this point was, in relation to the highway's medial line, was a crucial issue in the case.

When defendant first rested his case, plaintiff demurred to the evidence and moved for a directed verdict. After these were overruled, and defendant, upon being allowed to reopen after the jury was instructed, elicited further testimony from one of his previous witnesses, plaintiff renewed her said demurrer and motion; and they were again overruled. Upon submission of the case to the jury, it returned a verdict denying any recovery to either plaintiff or defendant. After the overruling

of her motion for a new trial, plaintiff perfected this appeal.

Her "Proposition IV" for reversal is as follows:

"The Judgment and Verdict of the Court Was Not Sustained by the Evidence and the Court Should Have Instructed Jury to Render Verdict in Favor of Plaintiff in Fair Amount and Because the Verdict Is Not Supported by the Evidence, the Court Erred in Not Sustaining the Motion for New Trial and in Failing to Sustain the Demurrer of Plaintiff to Defendant's Evidence."

Under this Proposition, plaintiff's counsel say, in their initial brief, that: "There really is no disputed fact", and in their reply brief, that they "do not believe there was any conflict in testimony whatsoever other than the statements of the highway patrolman * * *". However, by attacking the weight and credibility of the testimony of defendant's witness Huffman, and the competency and admissibility of parts of the highway patrolman's testimony, they tacitly, or in effect, concede that both of these witnesses' testimony could be interpreted, and given credence, to support the verdict. Consequently, we do not deem this fourth proposition worthy of further consideration under the rules pertaining to such assigned errors at trials resulting in judgments upon verdicts. In this connection, see the cases digested in 2A Okla. Dig., under Appeal and Error, ☞991, 994, 996, 999(1), 1001 and 1002.

Under her Proposition I, plaintiff contends that the trial court erred in admitting certain testimony of Trooper W. P. Tucker. His arrival at the scene of the accident was at 8:30 (A.M., thirty minutes after it happened). He testified that when he arrived there, he found a GMC Diesel truck and a car had collided "as they were coming around the curve." The witness was then asked on direct examination if he recognized "the lay of the curve" on a map, drawing, or diagram of the intersection of the two highways introduced in

evidence as Defendant's Exhibit C. He was then asked to point out on this Exhibit where the two vehicles were when he arrived at the scene. A subsequent portion of this witness' examination is as follows:

"Q. Trooper, did you investigate and examine the highway slab under and around and behind each of these vehicles at that time? A. Yes, I did.

"Q. Will you tell the jury what you found? A. The truck approached from this direction and traveled here (the witness was apparently tracing the truck's course on defendant's Exhibit C).

\* \* \* \* \* \*

"Q. \* \* \* It proceeded in which direction around the curve? A. Northeasterly until he turned.

"Mr. Murphy:

"We object to this line of questioning. The witness testified he wasn't there at the time of the accident and would be incompetent to testify as to anything the truck did prior to the accident.

"The Court:

"Overruled.

\* \* \* \* \* \*

"Q. You may proceed. A. And upon making an investigation of the tire marks and skid marks or any evidence to show us what might have caused this accident \* \* \* \* \* \*."

Plaintiff's counsel say that the last part of Trooper Tucker's last-above quoted answer was "definitely prejudicial as fixing in the mind of the jury that here is a person who is going to tell them what was done and what happened notwithstanding \* \* \* (the testimony of) every other witness who testified." If such an implication was intended by the witness—which we doubt from the tenor of the testimony which followed the particular expression referred to—we have no reason to believe that the jury so interpreted it, or was wrongfully influenced by it. We think it is plain from Tucker's testimony as a whole that the remark in question was merely an explanatory preface to the testimony following it, in which he enumerated and described various physical facts and indicia that ordinarily furnish clues to be taken into consideration in arriving at the cause of a motor vehicle accident, after it has occurred.

Nor do we think that the case of Demarais v. Johnson, 90 Mont. 366, 3 P.2d 283, 77 A.L.R. 553, cited by plaintiff, supports her argument. While it is true that the court there said that as a general rule a witness must state facts, rather than opinions or conclusions, the report of that case does not contain all of the statements in the purported quotation from it in plaintiff's brief. Nor do we agree that since there were eyewitnesses to the accident, Trooper Tucker's quoted testimony was inadmissible. The part of said testimony pertaining to the direction in which the vehicles were traveling, previous to the accident, concerned a fact about which there was no controversy. In this connection, notice Leeper v. Thornton, Okl., 344 P.2d 1101, 1106. Nor do we see any pertinent similarity between the above quoted part of Tucker's testimony and the highway patrolman's testimony, whose admission in Maben v. Lee, Okl., 260 P.2d 1964, was held reversible error.

Plaintiff's brief further quotes the following excerpt from Trooper Tucker's testimony concerning the truck's skid marks:

"Q. Did they proceed to the wheels of the truck as it rested at the scene of the accident at the time you arrived? A. Yes. They commenced 51 feet back here and slid to a stop, and the drive axle or the axle which pulls the truck —when that part of *the truck was hit* there were skid marks to the south of that original straight line of skid marks." (Emphasis ours.)

Plaintiff's counsel's objection following the above quoted answer was overruled; and, they now say the expression therein " \* \* the truck was hit \* \* \*" was prejudicial. They further say: "This is permitting so-called expert testimony to go as positive evidence and just not as an expression of an opinion." Here again, we disagree with

counsel's appraisal of the claimed error. Though the patrolman's remarks may have been inept, or inadvertent, and he might better have said: "When that part of the truck and the auto came *into contact with each other*," we know as a matter of fact that in talking about collisions between vehicles, people quite commonly speak of one hitting the other, when all they actually mean is that they came together, or collided. Examples of inappropriate language other than the above-quoted one appear in other parts of the patrolman's testimony, but there also appears therein a colloquy between the trial judge and defendant's attorney which must have impressed the jury with the truism just mentioned. If this court set aside verdicts or judgments on account of each objectionable implication that might be drawn from parts of the testimony of a single witness, taken out of context, there would probably be few left standing. Furthermore, if it was obvious from Tucker's "entire whole testimony" that he was not an impartial witness, as counsel charges, then we may presume that the jury was not blind to such characteristic, and took it into consideration in weighing his testimony.

 Plaintiff also complains of Trooper Tucker's having been asked if there was "evidence of any kind on that highway that the truck at any point was to the left of the center line of the highway?" The record reveals that immediately upon this question's being objected to, it was modified at the court's suggestion, and no objection was made to the witness then answering the modified, or rephrased, question.

A subsequent part of the witness' examination is as follows:

"Q. Trooper, how do you determine the point of impact at the scene of an accident?

\* \* \* \* \* \*

(Here an objection by Mr. Murphy was overruled).

\* \* \* \* \* \*

"A. Upon arriving at the scene of the accident the first thing the Trooper

does to make an investigation is to determine the physical evidence left at the scene of the accident. By physical evidence I mean such as tire marks, skid marks, debris, glass and busted radiators, busted gasoline tanks or anything that would show us where the accident might have happened so that we can pin point the approximate location of the accident or as nearly as possible.

\* \* \* \* \* \*

"Q. Did you make that investigation at the scene of this accident; the one you referred to? A. Yes.

"Q. Will you tell just exactly what you did and exactly what you found? A. When I arrived at the scene of the accident I found these two vehicles had collided and the position of them was noted then I go back and pick up any physical evidence left by either vehicle, and at this particular one the gas tank was busted. It isn't a gas tank. It's a diesel fuel tank. This diesel tank was laying to the east of where the skid marks had stopped. This diesel fuel was still out on the pavement.

\* \* \* \* \* \*

"Q. Go ahead and tell about the investigation relating to the point of impact. A. The skid marks and the position of the truck and the position of the other automobile—the positions they were in, after investigating the accident, shows me where the two vehicles were traveling and how they were traveling, then to establish a point of impact you measure from the center of the highway to the left skid marks of either vehicle to determine where the point of impact is located.

"Q. Then you determined the point of impact that morning? A. Yes.

(Here an objection by Mr. Murphy was overruled).

\* \* \* \* \* \*

"Q. Will you take your pencil and mark on there (apparently Defendant's Exhibit C) the point of impact as deter-

mined? A. Here is the telephone pole on the west side on the shoulder. This is where the traffic was being routed around. This is where the car was setting that was going south. The truck was here. I established the point of impact as being approximately 18 inches east of the center line.

"Q. Do I understand your testimony that from the physical evidence on the highway and from the position of the vehicles and the skid marks, etc., you established the point of impact—where the two cars came together, as being 18 inches east of the center line of the highway on the east side of the line? A. Yes. That's so. * * *."

Plaintiff's counsel charges that in allowing Tucker to tell "how he as a trooper can pin point the approximate location of the accident or as nearly as possible", the trial judge permitted him to go further than was ever intended "to widen the doors of opinion evidence." They further say that the jury could have decided this case without Trooper Tucker's testifying as he did; that wrongfully allowing him to give the details of his investigation, in the manner he employed, influenced the jury to give his testimony greater weight than that of the eyewitnesses. In support of their argument, they cite cases to the effect that the opinion of an expert should not be received in evidence when it purports to pass on the only, or ultimate, issue to be decided by the jury. They further cite the following expression concerning expert testimony quoted in Thomas v. Inland Motor Freight, 190 Wash. 428, 68 P.2d 602, 609, from People v. Morrigan, 29 Mich. 4:

"Such testimony is not desirable in any case where the jury can get along without it; and it is only admitted from necessity, and then only *when it is likely to be of some value.*" (Emphasis ours.)

A leading case on the general subject before us is Tuck v. Buller, Okl., 311 P.2d 212, 66 A.L.R.2d 1043, in which this court held:

"A highway patrolman with proper training and experience in investigation of traffic accidents and submission of reports on facts and causes of such accidents may give expert testimony as to the point of impact (or collision) when his opinion derives from examination of physical evidence or indicia at the scene."

Plaintiff makes no claim that Patrolman Tucker lacked sufficient training and experience in the investigation of traffic accidents and the submission of reports thereon to qualify him as an expert. However, in his testimony, Tucker used words, or expressions, that were more categorical than necessary, or strictly appropriate, such as: "I established the point of impact * * *"; yet, as said in the Tuck case, supra:

"* * * Any testimony given by the investigator, unless he was a witness to the accident, is necessarily based upon an opinion and a conclusion, which of course * * * is generally a question for the jury."

In the cited case, we further noted that an expert's opinion admitted in evidence, is simply to be considered by the jury for what it is worth. This, in substance, is what the trial judge, in the present case, told the jury in his Instruction No. 22, and he further emphasized, and elucidated upon, this when he also instructed them that they were not required to surrender their own judgment for that of any person testifying as an expert "or to give controlling effect" to his opinion, but that his testimony "like that of any other witness" was to be given such weight and value as they deemed it "entitled to receive." In view of the foregoing, and the record as a whole, we cannot believe that, despite some of Tucker's wording, the jury thought his testimony was to be accepted as infallible verity, or that they were unable to distinguish between the statements of fact and statements of opinion contained therein. Nor do we think his testimony was inadmissible because the jury could have correctly decided the case without it. In the Tuck case, supra, we noted that defendant's argument posed the question of whether the crucial issue there was of such a nature that the jury was

presumably unable to pass on it intelligently without the assistance of expert opinion; and we decided that said issue, concerning as it did, "point of impact", distinguished that case from the Minnesota case [Beckman v. Schroeder, 224 Minn. 370, 28 N.W. 2d 629] cited by the defendant therein, in that the jury would not have as comprehensive knowledge on that subject as would an expert witness. Therefore, though the jury might conceivably have been able to correctly determine the issue without the aid of expert opinion, we think that since, in this jurisdiction, the trial court has a "wide latitude of discretion" in determining whether such testimony should be admitted (Tuck v. Buller, supra, citing Kurn v. Margolin, 187 Okl. 135, 101 P.2d 818) and, in accord with the authorities, we cannot say that such evidence was not of probable value to the jury in determining the vehicles' point of impact, we cannot hold that said court abused his discretion, or committed reversible error, in admitting it.

■ Plaintiff's counsel also quotes from that part of the trial proceedings in which they unsuccessfully objected to elicitation of additional testimony from Tucker as follows:

"Q. Trooper, in a curve of that character, can you tell from your experience and your education the critical speed.

\*　\*　\*　\*　\*　\*

"A. I don't believe that particular highway is marked for any critical speed.

"Q. Assuming there would be a critical speed there, what would be the result of a speed in excess of that critical speed of a vehicle going around the curve?

\*　\*　\*　\*　\*　\*

(Objection by Mr. Murphy).

"A. Any vehicle approaching that curve from the west going to the north and if he was exceeding what we would call a critical speed, he would auto-matically pull to the outside and run off the shoulder from the outside.

"Q. Automatically? Do you mean he would run off or skid off? A. Well, the momentum would carry him off the shoulder to the outside.

"Q. Was there any evidence on the east side of that curve to indicate that truck skidded to the east before the impact?

\*　\*　\*　\*　\*　\*

"A. No."

There was no direct evidence in this case that the truck *skidded* into plaintiff's car, or slid sideways (across the medial line) immediately prior to the collision, or to indicate that there was any relationship, whatsoever, between either of the vehicles' respective speeds, and the collision. The above quoted testimony was therefore immaterial. Consequently, its admission is not in the same category as errors that may not be regarded as harmless, or non-prejudicial, under the principles enunciated in 3 Am.Jur., Section 1027, 1028 and 1029, cited in Maben v. Lee, supra. Under the circumstances of this case, we are of the opinion that such admission, if error, presents no valid ground for reversal.

■ Plaintiff's next argument refers to claimed error, or errors, in connection with certain statements contained in defense counsel's opening statement. Though no part of this statement is incorporated in the case made, the court reporter's transcript of the proceedings is as follows:

"To certain remarks and statements made by Mr. Benefield, the following objection was interposed:

"Mr. Murphy: We object to any statement relating to failure of the plaintiff to submit to an examination. That can only be a proper subject of cross examination. In the opening statement it is not a proper reference. It can form no part of the proof. It will be strictly a situation and something that can be delved into on cross examination if the plaintiff is placed on the witness stand.

"Mr. Benefield: I think we have a right to say what the evidence will be and what it should be.

"The Court: I will overrule your objection and make a statement to the jury and that will dispose of the matter at this time. Ladies and gentlemen, the defendant M. E. Hickman has filed in this court his motion to require the plaintiff to submit to a medical examination by a physician to be chosen by the defendant or, in the alternative, by the court. Objection was made to this motion and it was not consented to by the plaintiff and the court thereupon denied the motion and ruled that the defendant was not entitled to have the plaintiff to submit to a medical examination and both parties were allowed exceptions. I will allow you exceptions to my statements here today."

In their brief, plaintiff's counsel say:

"We feel that the statement at the opening of the case that the plaintiff wouldn't submit to a physical examination was for the purpose of having the Jury to get the impression the plaintiff is trying to take advantage of us.

"We feel that the Court should not have elaborated on the subject, but merely to have sustained our objection. By the Court dwelling as he did on what was done, had the same effect as counsel in telling the Jury, 'here we asked her to let us examine her, but she refused.'

* * * * * *

"In this case, the plaintiff did not offer her body in evidence.

"It was therefore prejudicial for any comment of any kind or nature to have been made."

From the quoted argument, there is room for uncertainty as to whether the complaint is about the unrecorded remarks of defendant's attorney, Mr. Benefield, or about the trial judge's ruling on plaintiff's attorney's objections to such remarks, or about the trial judge's remarks other than his ruling, or about all of these things. In any event, the governing rule of appellate review as to all such errors is that they will not constitute cause for reversal, unless it is made to appear that they worked prejudice against the complainant. See Tulsa Hospital Ass'n v. Juby, 73 Okl. 243, 175 P. 519, 22 A.L.R. 333, and St. Louis-S. F. Ry. Co. v. Stuart, 173 Okl. 221, 47 P.2d 177. In the present case, according to the undisputed facts, plaintiff was knocked unconscious in the collision, and, as a result thereof was hospitalized. There was no evidentiary contradiction of the financial detriment she suffered by reason of said hospitalization, or of the amount thereof. Consequently, we must assume that had the jury determined defendant's negligence was responsible for the collision, it would, by its verdict, have allowed her recovery of damages in that amount, if no more. Since the verdict was in favor of defendant, however, and allowed plaintiff no damages, even in a nominal sum, we can only conclude that it determined that her own negligence proximately caused, or contributed, to the accident so as to preclude *any and all* recovery by her. Because of this situation, we cannot believe that the matters complained of, which in no manner related to the question of which of the parties was legally responsible for the accident, but related only to the nature and extent of plaintiff's injuries, or the amount of her damages, could have affected the jury's verdict. In this view, such alleged errors can only be considered harmless. See City of Tulsa v. Hodge, Okl., 293 P.2d 344. Our research has revealed that one of the decisions in Tallabas v. Wing Chong, Tex.Civ.App., 72 S.W.2d 636, cited on page 1,021 of the Annotation at 29 A.L.R.2d 996, adopted a view different from ours, but because of the differences between the trial situation in that case and the one here, we think it distinguishable from the present case, and should not be followed herein.

█ Plaintiff's next argument concerns the introduction of defendant's Exhibit E. This was a sealed envelope containing the plaintiff's deposition taken by defendant

previous to the trial. At the trial plaintiff was present, but did not testify. Her brief says her decision to not become a witness was "based upon the doctor's testimony as to her loss of memory and forgetfulness which is the result of the accident." The record of the trial proceedings concerning the introduction of this exhibit reveals that the deposition itself was not offered, but only the envelope containing it. On the outside of the envelope is a signed statement by a Notary Public identifying the contents thereof as the deposition of plaintiff; and defense counsel say that the only reason the envelope was introduced was for what it might be worth in refuting any inference, from her medical evidence, of plaintiff's mental incapacity to testify. Notwithstanding the described record showing, plaintiff's argument treats the deposition itself as having been introduced. She relies upon statutory provisions and court decisions to the effect that this cannot be done when the deponent is present in court. She charges that the introduction of this exhibit confused the jury, and alleges that the jury's confusion was "evidenced by the number of times it came back into the Court Room trying to arrive at a verdict." The case made contains no support for the latter representation; and plaintiff makes no effort to explain how, or why, the introduction of the sealed envelope was prejudicial to her. Undoubtedly the statutory provisions and court decisions she relies on are not applicable to the deposition's cover, or envelope, as distinguished from the deposition, itself. We therefore apply the harmless error doctrine to the introduction of this exhibit, and hold that the error in the introduction of the sealed envelope, if any, constitutes no cause for reversal under the circumstances. See Bentley v. Melton, Okl., 316 P.2d 591.

▮▮▮ Under her Proposition II, plaintiff argues that the trial judge erred in permitting defendant to reopen the case after the jury had been instructed. The factual background of this alleged error is substantially as hereinafter related. During his direct examination, plaintiff's witness, Leonard Goodpasture (who, as hereinbefore indicated, gave testimony tending to show that, at the time of the collision, plaintiff was driving on the proper side of the highway) testified, in substance, that, after the collision occurred, he drove into Hennessey and on to the Cordry funeral home there, encountered Jiggs Roland, one of its employees, standing outside, and personally informed him of the accident, and that "they needed an ambulance." Witness Goodpasture further testified that he then went home, whereupon he unsuccessfully tried to report the accident to Justice of the Peace John C. Cupps, who was not in his office. When Justice of the Peace Cupps was first called as a witness for defendant, he testified that some "excited" person reported the accident to him by telephone, but he was unable, at the time of that testimony, to identify that person. It was for the purpose of recalling Cupps to the witness stand for further interrogation about this rather incidental and immaterial circumstance that defendant was allowed to reopen. Cupps' testimony, on this later occasion, related that, upon being excused from the witness stand after his first testimony, he checked the "operating log of the radio station", at Hennessey, and found that he had been notified of the accident by one Carl Grulkey of El Reno. He also testified that, according to this log, he called "Cordry & Son" for an ambulance to go to the scene. In their argument, plaintiff's counsel say they realize that, "in most instances", the reopening of cases for taking further testimony rests in the sound discretion of the trial court, but they contend that such ruling here was an abuse of such discretion, and prejudicial, because the purpose of recalling Cupps was "to try to discredit" plaintiff's witness Goodpasture, and "It would tend to confuse the jury." In connection with this argument, they cite the case of Granato v. Wise, 94 Pa.Super. 346. That was an automobile case, in which, before resting, plaintiff introduced no evidence connecting defendant with the driving of the "colliding automobile." Subsequently, the defendant rested, presumably

recognizing that no cause of action against him had been established. Thereafter, plaintiff sought to reopen, to supply her previous omission, by offering in evidence part of "the statement of claim * * * averring that the colliding automobile * * *" was being driven on the defendant's business, or by his representative in the course of his employment. Apparently, the trial court refused to let plaintiff reopen for that purpose, and, after the jury had returned a verdict for plaintiff, said court set it aside, sustaining defendant's motion for judgment notwithstanding the verdict. On appeal from said judgment, the appellate court, in affirming on the ground that the trial judge had not abused his discretion, said:

> "It would have been unfair at that stage of the case to permit a fatal defect in the evidence to be supplied by one party without opening the whole case to permit the other party to put in his evidence which he was not required to put in earlier because liability had not been made out."

Obviously, the cited case is not analogous to the present one, and in no way demonstrates that the trial court abused his discretion here. On the basis of the record before us, any conclusion that the subject ruling resulted in prejudice to plaintiff would be pure speculation. We refuse to reverse on that basis. For authorities in connection with this assigned error, see Tit. 12 O.S.1951 § 577, subd. 4; State Bank of Westfield v. Kiser, 46 Okl. 180, 148 P. 685; 53 Am.Jur., "Trial", sec. 126, 88 C. J.S. Trial § 106.

 Under her Proposition III, plaintiff complains of the trial court's giving part of its Instruction No. 21, and refusing to give plaintiff's requested Instructions Numbered 4 and 5. The challenged part of Instruction No. 21 reads as follows:

> "You are instructed that negligence, contributory negligence, proximate cause of an injury, damages or any other fact or facts in issue in this action may be established or rebutted by

either direct evidence or testimony as to such fact or facts, or by circumstantial evidence and the reasonable inferences to be drawn therefrom. * * *."

The basis of plaintiff's claim of error in the giving of the above quoted instruction is her contention that, as concerns contributory negligence, it was inapplicable to the case, and she cites Kelly v. Employees Gas Co., 202 Okl. 437, 214 P.2d 925, to the effect that where no evidence of contributory negligence has been introduced, it is error to submit such question to the jury. In the cited case, the defendants introduced no evidence whatsoever, and plaintiff's evidence had no tendency to establish any contributory negligence on her part. That is not true of this case. Plaintiff's contention that there was no such proof here employs a biased interpretation of the evidence which we cannot accept. Without further lengthening this opinion for a more extensive description of the evidence, we think it sufficient to say that it was ample to join issue on the subject of contributory negligence, and to warrant that issue's submission to the jury.

 Plaintiff's counsel fails to point out how the trial court's giving of her requested Instructions Numbered 4 and 5 would have been more favorable, or just, to her side of the case than the instructions given by the court. Nor do they demonstrate error in the court's refusal to give these two instructions. Their only argument pertains to their requested Instruction No. 5, and is, in substance that the court should have given it because, on the basis of some of the evidence, the defendant had the "last clear chance" to avoid the accident. We see no relation whatsoever between Instruction No. 5, and the doctrine of last clear chance, and therefore fail to see how it would have submitted such an issue to the jury. However, we have carefully examined all of the instructions given by the court and are of the opinion that they fairly submitted the fundamental issues of the case to the jury. In our opinion, these two requested instructions would have added nothing important, with reference to

those issues, that was not adequately included in the instructions given. The trial court's judgment, in accord with the jury verdict, was within the issues of the case; and, as we have seen, it cannot be said to be without competent evidence reasonably tending to support it. As it does not appear that the court's refusal to give the requested instructions resulted in a miscarriage of justice or constituted a substantial violation of any of plaintiff's constitutional or statutory rights, such reversal, if error, can only be regarded as harmless. Bedwell v. Williams, Okl., 330 P.2d 359.

As we have found no sufficient ground for reversing the judgment in any of plaintiff's arguments, it is hereby affirmed.

WILLIAMS, C. J., and DAVISON, HALLEY, JOHNSON, JACKSON, IRWIN and BERRY, JJ., concur.