Forney SANDLIN, Administrator of the
Estate of James R. Davis, deceased,
Plaintiff in Error,

v.

Loyd O. FREEMAN, Defendant in Error.

No. 40580.

Supreme Court of Oklahoma.

June 30, 1964.

Julian B. Fite, Hardy Summers, A. Carl Robinson, Muskogee, for plaintiff in error.

Ernest R. Anthis, Jr., and Paul Gotcher, Muskogee, for defendant in error.

BERRY, Justice.

Plaintiff received serious, painful and permanent bodily injuries as the result of an automobile collision which occurred De-

cember 26, 1957, and in which four members of plaintiff's family and defendant's decedent lost their lives. Subsequent to issuance of notice to creditors, the plaintiff filed claim with the administrator, hereinafter referred to as defendant, for hospital and medical bills, personal injuries, loss of earnings and of personal property. Disallowance of the claim resulted in filing of this action for damages for personal injuries.

The petition alleged that at approximately 5:30 A.M. on December 23, 1957, plaintiff was driving his 1953 model automobile west on Highway 266 at or near the county line between Muskogee and McIntosh Counties. Defendant's decedent was traveling east on the same road in his 1956 model automobile. As the result of a collision between these vehicles plaintiff was seriously and permanently injured. The petition charged such accident resulted from negligence and want of care upon the part of decedent by reason of violation of certain existing statutes (47 O.S.1951 § 121.3 et seq.), requiring operation of vehicles at a prudent speed with regard to existing conditions; (2) at speed permitting stopping within assured clear distance ahead; (3) within posted speed limits when any road is under construction or repair, or a detour has been designated; (4) that decedent was operating his vehicle at excessive speed in violation of existing statutes (47 O.S.1951 § 121.4), requiring drivers of vehicles traveling in opposite directions to pass to the right, and upon roads only wide enough for one line of traffic in each direction to keep to the right of center of the roadway; and that decedent failed to keep a proper lookout or to have his vehicle under control.

The extent and painful and permanent nature of plaintiff's injuries were alleged, for which plaintiff asked judgment for $20,000.00, based principally upon lost earning capacity. A second cause of action asked judgment for $960.00 for loss of plaintiff's automobile.

By answer defendant admitted occurrence of the accident but denied that decedent was negligent in any respect. Further, any injury or damage suffered by plaintiff resulted from his own negligence in violation of the statute mentioned; if any negligence existed plaintiff was guilty of contributory negligence; plaintiff's accident and injuries resulted from unavoidable accident.

No issue is presented in this appeal relative to the plaintiff's injuries or the damages awarded therefor. The only questions sought to be presented by defendant involve the sufficiency of the evidence. The first contention is that the trial court erred in overruling defendant's demurrer to plaintiff's evidence. The second proposition is that the trial court erred in overruling defendant's motion for directed verdict. The argument under these propositions is submitted under three headings. The manner of presentation and questions sought to be raised require summation of the evidence.

Plaintiff lived near Porum where he operated a large farm. Concerning the accident, he testified that he left home quite early to drive his wife and four children to Oklahoma City to visit the wife's parents. At the "Y" south of Wainwright plaintiff turned onto Highway 266, with which road he was familiar having made 20 to 25 trips over the road while hauling material from Checotah to his farm. When he first moved to the area the road in McIntosh County was under construction and it was necessary to travel a detour, and plaintiff was familiar with the road and the manner in which laid out. It was dark and the car lights were on when plaintiff turned toward Checotah; as he passed over a rise about a quarter mile from where the highways meet he observed decedent's car lights come over a hill proceeding in an easterly direction at a high rate of speed; decedent's car lights were going up and down rapidly over the hills; plaintiff had been driving about 55 miles per hour but had slowed his car because there was a "drop off" of approximately two feet where the highways meet, and a curve, and he was aware where he was on the road. Plaintiff turned slightly to go into

the curve on his side of the road and was preparing to turn back to the left when decedent's car turned in front of him; plaintiff was on his side of the road and watching the car lights approaching when suddenly decedent's lights were in front of his car. The road in McIntosh County is paved and the road in Muskogee County is blacktop. The last plaintiff remembered, his car was on blacktop until later when he smelled ether and heard voices and learned that he was in the hospital. Insofar as concerns the happening of the accident, the foregoing completed the case and plaintiff announced rest.

At this point it is noted that the record does not reflect defendant interposed a demurrer to plaintiff's evidence or a motion for directed verdict at the close of all the evidence. However, the order overruling the motion for new trial recites the overruling of such a motion and under these circumstances we shall consider questions based upon the alleged insufficiency of the evidence as having been properly raised.

The evidence in defendant's behalf was elicited from two highway patrol troopers. The first trooper was stationed at Eufaula and had been a trooper about six months. Arriving at the scene 35 to 40 minutes after the accident, he ascertained the accident occurred in Muskogee County and so did not make a thorough investigation but observed conditions and arrived at certain conclusions before the other trooper arrived. This witness (Townsend) gave a great deal of testimony by indicating points, locations and directions upon a blackboard upon which we necessarily assume a drawing, diagram or scale map of the scene of the accident was depicted for benefit and enlightment of the jury. This witness testified he was able to establish the "point of impact" as being on the south side of the yellow line from skid marks but did not estimate how far south of the yellow line. He determined from physical evidence of skid marks that plaintiff's car was south of the center line.

On cross-examination the witness stated there was glass and debris all over the highway and in the ditches, and indication of traffic having moved through after the accident. There were approximately 72 feet of skid marks on the pavement which stopped before the blacktop. Witness did not know whether another vehicle came by the scene and struck the cars again, although there was a report of another car having an accident at the same time. The other trooper was called by radio and arrived about an hour later when it was day light. Parties other than the patrolmen investigated this accident and their findings disagreed with the witness's findings. There had been a report concerning a third car but so far as physical evidence was concerned they did not establish this. The witness's testimony was his opinion based upon experience.

The second trooper (Harshaw) had seven months' experience when called to investigate the accident. This witness likewise testified by marking on a blackboard for the benefit of the jury. He observed the cars and physical evidence and made investigation with reference to point of impact which he determined was 12 feet south of the center line and 24 feet from the edge of the road. From the record it is impossible to determine which edge of the road was referred to. There were 74 feet of skid marks, and at the point of impact there were "a few tire marks and gouge marks on this surface", not further identified. The witness determined decedent's car was traveling east and plaintiff's car was south of the center line, although he did not believe there was any center-line marking.

On cross-examination this witness testified he always listened to what people had to say as this is a determining factor. It did not take long to figure this accident since he established the point of impact from tire marks and gouges and these could not have been made by gouges from the rear of one of the cars; in his opinion the front ends of the cars had to be knocked down immediately to cause the gouge marks. He

remembered two distinct gouges in the middle of the westbound (plaintiff's) lane and the other car was facing south on the road to the right of the impact; there was "glass and stuff" scattered over the whole area. This witness also testified he "ruled out" consideration of gouge marks in the westbound lane; that the point of impact could have been on plaintiff's side and that a car could slide over to where the heaviest gouge marks appeared, although he would not say the accident could not have happened that way. The collision and skid marks indicated decedent's car was traveling at a high rate of speed since the car laid down 74 feet of skid marks which stopped before the end of the pavement. He also was aware that others who investigated the accident disagreed with his conclusions. The "drop-off" made the road elevation of the blacktop in Muskogee County 18 to 24 inches lower than the pavement. He had worked this type of accident before and "ruled out" the possibility the skid marks on the blacktop from "there to there" (apparently indicating on the blackboard for the jury's benefit) could have been caused by a third car, but did not recall his reason for this; the cars struck at an angle and rolled against one another thus damaging the side of each.

This witness also used and was interrogated concerning a number of matters we assume were depicted upon a blackboard. By means of questions involving particular matters reflected by indications of "here" and "there to there", a great deal of evidence was elicited as expert testimony dealing with the physical facts at the scene. The jury had the benefit of such demonstrative evidence in arriving at the verdict upon which thhe judgment now complained of was based. In view of the arguments urged on appeal it may be an unfortunate circumstance that the record on appeal wholly fails to present the demonstrative evidence upon which such arguments are based.

As noted earlier, defendant's entire claim for reversal of this judgment rests upon the asserted insufficiency of the evidence to show actionable negligence which was the proximate cause of plaintiff's injury and damages. The argument is made under the following subdivisions: (1) negligence is not established where defendant's negligence is not the most reasonable inference from the evidence or where plaintiff's evidence is open to "two plausible inferences"; (2) an inference resulting from a proved fact cannot be utilized as a proved fact to provide a basis for a further inference; (3) where the physical facts positively contradict th testimony of a witness, neither the court no the jury can give credit thereto.

Under (1) above, defendant insists plaintiff's evidence that he was traveling a familiar road, knew where he was and slowed for the turn in the road; knew he was on his side of the road and was unaware of approaching danger; and knew nothing after the headlights turned in front of him constituted only uncorroborated, self-serving declarations. Thus defendant says that this evidence is readily susceptible of two inferences which required the jury to speculate as to the cause of the accident. Such argument, leveled against the weight of the evidence, is not conclusive. Plaintiff's evidence was sufficient to establish that he was in the proper lane of traffic until the moment decedent's car lights appeared in front of his car. Neither the jury nor this Court could be required to infer that, although plaintiff testified to being in the proper lane of traffic, he failed to remain in such lane, did not negotiate the curve and drove into the wrong lane and straight into decedent's car. No rule of law requires this Court to reject a possible inference under a given state of facts accepted by the jury as the proximate cause of accident.

Under subdivision (2) of the argument, defendant asserts that in order to show negligence, even though it be assumed from plaintiff's testimony that he was in his lane of traffic when the accident occurred, it is necessary to indulge in the further inference that defendant crossed the center line and and struck plaintiff, in order to establish

**820**

actionable negligence. This argument is derived from statements such as appear in Tweed v. First Nat. Bldg. Corp., et al., 203 Okl. 31, 218 P.2d 356, that to add an inference to an inference in order to reach a conclusion is to depart from the evidence and enter into speculation and conjecture. This, in effect, simply is a reiteration of the argument noted above whereunder we declined to classify plaintiff's evidence as self-serving and accept defendant's construction and interpretation of the meaning of the evidence as grounds for reversing the judgment.

Under subdivision (3) defendant contends that when the physical facts positively contradict the testimony of a witness neither the court nor jury can give credit to such testimony. This contention is a portion of a statement which appears in Lee Way Motor Freight v. True, 10 Cir., 165 F.2d 38.

By reason of the conclusion reached herein, it is unnecessary to discuss the effect of certain testimony elicited from the highway patrolmen. It is sufficient to observe that we consistently apply the rule that testimony based entirely upon conclusions and opinions is inadmissible as an invasion of the province of the jury who are the triers of the ultimate facts. Maben v. Lee, Okl., 260 P.2d 1064. Counsel points out that the patrolmen testified decedent was in his proper lane. This was the issue to be decided by the jury and such testimony should not have been permitted. See also Leeper, Adm'x. v. Thornton, Adm'r., Okl., 344 P.2d 1101 at p. 1106(4).

The inconclusive nature of the testimony is to be noted. The principal investigator, by his own admission, "ruled out" practically every matter which might have been evaluated in an effort to ascertain the reason for the accident except for consideration of the presence of skid marks and the position of plaintiff's vehicle after the collision. The verdict either indicated that the jury did not believe the investigating officers' version of the physical facts surrounding the accident scene, or that the jury was able to evolve a different picture from the demonstrative evidence offered for the jury's consideration. Under either hypothesis, we are of the opinion no reason appears for interfering with the verdict of the jury which had the benefit of all the evidence and was instructed concerning the legal principles which governed the issues presented.

Viewed in light of the rule to be applied when passing upon a motion for directed verdict, we necessarily disregard the opinions and conclusions offered by defendant's witnesses. And, since the demonstrative evidence is not before us, we consider the physical facts pointed to by defendant to be wholly inadequate to provide any basis for disturbing the verdict and the judgment based thereon. See Miller v. Hickman, Okl., 359 P.2d 172.

Judgment affirmed.

BLACKBIRD, C. J., HALLEY, V. C. J., and JOHNSON, WILLIAMS, JACKSON and IRWIN, JJ., concur.